# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re: Case No. A06-00455-DMD<br><br>MARK J. AVERY,<br><br>Debtor. | Chapter 7<br><br>**Filed On 6/13/07** |
| WILLIAM M. BARSTOW, TRUSTEE and SECURITY AVIATION, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT F. KANE and KAREN KANE,<br><br>Defendants. | Adversary No. A07-90018-DMD |

## MEMORANDUM REGARDING POSSESSION

Robert Kane started working for Mark Avery in the fall of 2004. The scope of his duties are not clear. He received a salary of $5,500.00 a month from Avery's corporation, Avery and Associates, and other compensation. On June 28, 2005, Avery purchased a Winnebago motorhome for $100,871.00. Title to the Winnebago was placed in the name of Regional Protective Services, LLC, or Mark James Avery. Some time after its purchase, Avery endorsed the Winnebago's certificate of title to Kane. Kane took possession of the motorhome but didn't register the transfer of title with the Department of Motor Vehicles. He retains possession of the motorhome today.

Mark Avery pre-signed Avery and Associates checks for use when he was out of town. Robert Kane used one of these pre-signed checks to pay a local jeweler $92,000.00

for a 6.01 carat diamond ring on December 13, 2005.  Later, on January 30, 2006, Kane took another pre-signed check and paid the same jeweler an additional $34,000.000.  The second check paid for a new mounting for the 6.01 carat diamond ring and a pair of 6.05 carat diamond stud earrings.  The rings and earrings were given to Robert Kane's wife, Karen.  The jewelry is now stored in a safe controlled by the Kane's attorney, Kevin Fitzgerald.

Mark Avery filed a chapter 7 bankruptcy on October 23, 2006.  Security Aviation, Inc., an entity wholly owned by Avery, filed for chapter 11 relief on December 21, 2006.  Avery's chapter 7 trustee and Security Aviation initiated this adversary proceeding against the Kanes on May 9, 2007, seeking various forms of relief, including recovery of the jewelry and motorhome or a money judgment for their value, a money judgment for an additional $3.4 million on preference and fraudulent conveyance theories, disallowance or subordination of claims, and punitive damages.  A temporary restraining order was entered May 9, 2007, that prohibited the Kanes from disposing of the motorhome and jewelry.  Through stipulation, that order was continued until a hearing on the plaintiffs' application for a preliminary injunction, which was held on June 11, 2007.

To obtain a preliminary injunction, the plaintiffs must show "either a likelihood of success on the merits and the possibility of irreparable injury, or that serious questions going to the merits were raised and the balance of hardships tips sharply in [the plaintiffs'] favor."[1]  I find that it is likely, though not certain, that the plaintiffs will succeed on their claims to invalidate the transfers of property to the Kanes.  There are serious questions going

---

[1] *Rubin v. Pringle (In re Focus Media Inc.)*, 387 F.3d 1077, 1085 (9th Cir. 2004), *citing Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999).

to the merits of these unusual transactions. Further, if the defendants abscond with the assets, the plaintiffs will be irreparably harmed. The defendants will suffer minor hardships if a preliminary injunction is issued. But these hardships, essentially consisting of the inability to wear expensive jewelry or use a motorhome, are nothing compared to the hardships the plaintiffs would face if these assets were to be disposed of by the defendants before a trial on the merits. I find that the plaintiffs have satisfied the standard for obtaining a preliminary injunction. An order has been issued which prohibits any use, sale or other disposition of the motorhome or the jewelry by the Kanes or their attorneys or agents through entry of a final judgment in this adversary proceeding.

There is one issue that remains with regard to the plaintiffs' motion for preliminary injunction: whether the plaintiffs are entitled to an order directing turnover of the motorhome and jewelry as a pre-judgment remedy. The plaintiffs are pressing the court on this point because they want to sell the motorhome during the narrow window of marketability offered during the short Alaskan summer. They say the funds can be retained, after sale, pending the outcome of the other issues in this case. The Kanes do not agree with this proposal. They are losing their home and want to move into the motorhome.

The plaintiffs ask the court to order Kane to turn over the jewelry and motorhome at this stage of the proceedings under a variety of theories. First, they ask for a preliminary injunction compelling turnover. Injunctive relief of this sort is not typically granted, however, unless the moving party has made a clear or substantial showing of a

3

likelihood of success on the merits.[2]  At this stage of the proceedings, I don't feel that the plaintiffs have met this more demanding standard for injunctive relief.  They have shown a likelihood of success on the merits, but there are factors weighing in Kane's favor in this case as well.  Given the issues which are contested here, a mandatory injunction will not be granted.

Typically, a preliminary injunction is entered to preserve the status quo pending a trial on the merits.[3]

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.  Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.  A party thus is not required to prove his case in full at a preliminary-injunction hearing . . . and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.  In light of these considerations, it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits.[4]

I have entered a preliminary injunction which preserves the status quo in this case.  The jewelry is to remain in the safe custody of Kane's attorney.  The motorhome will remain in

---

[2] *Adelphia Commc'n Corp. v. Rigas (In re Adelphia Commc'n Corp.)*, 323 B.R. 345, 373(Bankr. S.D.N.Y. 2005).

[3] 13 *Moore's Federal Practice - Civil* § 65.20 [Matthew Bender 2007].

[4] *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (citations omitted).

4

Kane's possession, but Kane and his family cannot use or live in it pending the outcome of this proceeding. Nor can the plaintiffs sell the motorhome, until a final determination on the merits has been made regarding ownership of this asset. This order maintains the respective positions of the parties pending the outcome of this case after trial.

The plaintiffs also seek to compel turnover based on the state remedy for prejudgment delivery of personal property found in Ak. R. Civ. P. 88. In order to obtain relief under Rule 88, they must show that they are "the owner of property or lawfully entitled to its possession."[5] The plaintiffs contend trustee Barstow is the owner of the motorhome because Kane hasn't transferred title to this asset with the DMV or, alternatively, because he can recover the motorhome on fraudulent transfer, preference, or unauthorized post-petition transfer theories. The plaintiffs say they can recover the jewelry because Kane obtained it through conversion of the debtor's funds. The problem with these contentions is that they have not yet been adjudicated on the merits. Even the plaintiffs' title argument, as to the motorhome, is not as simple as it sounds. In Alaska, DMV registrations and certificates of title are prima facie evidence of ownership of a vehicle.[6] This evidence of ownership may be rebutted by oral testimony or other evidence.[7] The fact that Kane failed to register the transfer of the motorhome doesn't conclusively establish Barstow's entitlement to the vehicle.

---

[5] Ak. R. Civ. P. 88(b)(2).

[6] AS 28.10.261(a).

[7] *State Farm Mut. Auto. Ins. Co. v. Clark*, 397 F.Supp. 745, 752-53 (D. Alaska 1975); *Weaver v. O'Meara Motor Co.,* 452 P.2d 87, 90 (Alaska 1969).

5

Given the fact that each of the parties in this proceeding are anxious to have use of the motorhome, the best course of action would be to expedite trial of this matter pursuant to Fed. R. Civ. P. 62(a)(2).[8]  The court will set a scheduling and planning conference in the near future.  The scheduling of an expedited trial will be discussed at that time.

For the foregoing reasons, the preliminary injunction entered by the court on June 12, 2007, will not be further modified at this time to compel turnover of the motorhome and jewelry to the plaintiffs.  A scheduling and planning conference will be set in the near future, however, so that the court can discuss the option of an expedited trial with the parties.

DATED: June 13, 2007.

BY THE COURT

/s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

Serve:    C. Christianson, Esq.
C. Rader, Esq.
K. Fitzgerald, Esq.
W. Barstow, Trustee
K. Battley (courtesy copy)
P. Gingras, Adv. Case Mgr. - served 6/13/07 - am.
    6/7/2007 rb

---

[8] *See Camenisch*, 451 U.S. at 395 (citations omitted).

6